CAMPEAU GOODSELL SMITH, L.C.
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR
Campeau Goodsell Smith, L.C.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| In re: | Case No. **15-51396 MEH** |
| Blake Hurley McDonald and Elsie Botilda McDonald, | CHAPTER 7 |
| Debtors. | **TRIAL BRIEF RE CLAIM OF CAMPEAU GOODSELL SMITH, L.C. (CLAIM#1)** |
| | Hearing Date: June 28, 2016
Hearing Time: 10:00 a.m. |

Claimant Campeau Goodsell Smith ("CGS") submits this brief pursuant to this court's April 22, 2016 Scheduling Order Re: Chapter 7 Trustee's Objection to Claim ("Scheduling Order") (Doc#73) in support of its Proof of Claim filed on May 13, 2015 in the principal amount of $30,897.21 as of January 1, 2010, plus pre-petition contractual and statutory interest ("Claim#1) as follows:

**I.    Summary.**

The Trustee's Objection to Claim#1 (Docket#55)("Objection") asserted two theories: (1) a fee application was never filed with the court, the claim does not include a fee application, and does not include an order approving CGS fees incurred in a prior bankruptcy
**TRIAL BRIEF RE CLAIM OF CAMPEAU GOODSELL SMITH, L.C. (CLAIM#1)**

case and (2) the claim does not include a copy of the writing upon which it was based. CGS responded to the Objection (jointly "Response")(Docket#57 and 63). On April 21, 2016 the court held an initial hearing and thereafter set the matter for an evidentiary hearing pursuant to the Scheduling Order with the amount of CGS's claim for attorney's fees as the issue to be resolved.

CGS submits that the Objection must be overruled and Claim#1 allowed in its entirety for the reasons set forth in the Response. Specifically, Claim #1 represents the amount owed by Debtors to CGS incurred in a prior bankruptcy case plus contractual and statutory interest from January 1, 2010 through the date of commencement of this case, namely $47,326.53 consisting of $30,897.21 plus interest of $16,429.32 from January 10, 2010 through April 26, 2015 ($8.42/day x 1,942 days), Debtors never objected to the amount as stated by CGS, and on four (4) occasions Debtors filed schedules before this court acknowledging their debt to CGS, the addition of contractual and statutory interest, and the amount owed.

**II.    Factual Background.**

    **A. First Bankruptcy Case.**

On October 25, 2007 Blake McDonald and Elsie McDonald ("Debtors") retained Campeau Goodsell Smith, L.C. ("CGS") as their counsel for a Chapter 11 bankruptcy case and were provided an Attorney-Client Fee Contract ("Fee Agreement")(Exhibit A).

On October 25, 2007 the Debtors, with CGS as their counsel, filed a Chapter 11 bankruptcy petition commencing Debtors' first bankruptcy case, entitled In re McDonald, USBC (CA ND) #07-53443 ("First Bankruptcy Case")(Case Docket Exhibit B).

The First Bankruptcy Case was, in part, filed to stay the foreclosure sale on Debtors' real property interests, provide Debtors with the opportunity to pursue alternatives to the foreclosure sale, and provide Debtors with the opportunity to investigate and pursue available business opportunities through which they could avoid foreclosures, sell or secure financing for their business venture, and bring funds into the estate, and pursue a plan of reorganization. Debtors, with and through CGS, submitted to an Initial Debtor Interview and a Meeting of Creditors, attended various Status Conferences, filed monthly operating reports,

filed various schedules, negotiated with various creditors and prospective business partners or investors, opposed various motions for relief from stay, employed a real estate professional to sell Debtors' residence, and employed an accountant to help with monthly operating report filings. CGS's representation and efforts provided Debtors with the additional time required to address their rights and responsibilities with their lenders, to sell their properties to avoid foreclosures, to sell or secure financing for their business venture, and pursue a plan of reorganization.

### 1) Order Employing CGS Nunc Pro Tunc.

On March 20, 2008 CGS filed a formal motion to be employed as counsel for the Debtors in the First Bankruptcy Case nunc pro tunc. A required element of the nunc pro tunc portion of the motion was a finding that the attorney's services significantly benefitted the estate. On May 19, 2008 the Bankruptcy Court in the First Bankruptcy Case issued a formal order granting CGS's motion to be employed as counsel for the Debtors nunc pro tunc to October 25, 2007 (Exhibit C).

### 2) Motion to Be Relieved As Counsel for Debtors.

On September 16, 2008 CGS filed a motion to be relieved as Debtors' counsel on the grounds, inter alia, that Debtors had made it unreasonably difficult for CGS to carry out its employment for Debtors effectively, had not followed the advice of CGS, and Debtors and CGS did not agree on the progress of this case and the course of action going forward. On October 27, 2008 the Bankruptcy Court issued a formal order granting CGS's motion to be employed as counsel for the Debtors. Prior and subsequent to the conclusion of CGS's services it sent Debtors statements for services rendered. At no time prior to the Trustee's Objection did CGS receive any inquiry, response, or objection to these statements.

### 3) Dismissal of First Bankruptcy Case.

On January 31, 2012 the First Bankruptcy Case was dismissed by the court without establishing any deadline to file an administrative claim, without approving a plan of reorganization, without converting the case, and without granting a discharge. Prior and subsequent to the dismissal of the First Bankruptcy Case CGS sent Debtors statements for

services rendered. At no time prior to the Trustee's Objection did CGS receive any inquiry, response, or objection to these statements.

**B. Notice of Client's Right to Arbitration/State Court Action.**

On December 6, 2012 CGS sent Debtors correspondence and a formal Notice of Client's Right To Arbitration asserting its demand for $30,897.21 as of January 1, 2010, plus interest, costs, and attorney's fees (Exhibit D). Debtors never objected to the prior invoices sent to them or the December 6, 2012 correspondence and never demanded arbitration.

In January/February 2013 CGS stood ready to commence a state court action against the Debtors to recover the outstanding debt and therein pursue causes of action including breach of contract, account stated, open book account, money had and received, and quantum merit.

**C. Second Bankruptcy Case.**

On March 11, 2013 Debtors filed a Chapter 13 bankruptcy, In re McDonald, USBC (CA ND) #13-51383 ("Second Bankruptcy Case").

On August 13, 2013 CGS timely filed a Proof of Claim in the Second Bankruptcy Case for $40,753.11, including interest and other charges, for attorney's fees and costs incurred pursuant to the Fee Agreement and related to the First Bankruptcy Case ("CGS First Proof of Claim")(Exhibit E). CGS First Proof of Claim indicated, in part "If the document are not available, please explain: Available upon request of proper party." CGS First Proof of Claim also included a Proof of Claim Attachment which indicated, in part, that:

"1. Amount of Claim (as of 3/11/2013)

  Principal $30,897.21
  <u>Interest   $ 9,855.90</u> (10%/year or $8.46/day x 1165 days (1/1/10-3/11/13))
  Total   $40,753.11"

The principal amount is net of any retainer, including the retainer the Debtors and/or the Trustee noted was paid by the Debtors (See Doc#65 and 66)) as part of the First Bankruptcy Case, and represents the net amount owed to CGS relative to its representation of the Debtors in the First Bankruptcy Case pursuant to the Fee Agreement. This net principal amount is consistent with the only accessible billing information, namely an AR Journal report,

showing the carry over balance as of January 10, 2010 at $30,897.21 (Exhibit F), and CGS's copy of the Debtor's retainer check and CGS's associated deposit confirmation (Exhibit G).

On October 17, 2013 Debtors filed an Amended Schedule F (Creditors Holding Unsecured Nonpriority Claims) where they specifically added CGS as an unsecured creditor for services provided in the amount of $40,753.11 and declared, under penalty of perjury, that the debt was not contingent, unliquidated, or disputed (Doc#27)(Exhibit H).

On September 8, 2014 Debtors filed another Amended Schedule F (Creditors Holding Unsecured Nonpriority Claims) where they specifically identified CGS as an unsecured creditor for services provided in the amount of $40,753.11 and declared, under penalty of perjury, that the debt was not contingent, unliquidated, or disputed (Doc#34)(Exhibit I).

On December 19, 2014 the court dismissed the Second Bankruptcy Case without approving a plan of reorganization, without an objection to CGS First Proof of Claim, without converting the case, and without granting a discharge.

**D. Third Bankruptcy Case.**

On April 27, 2015 Debtors filed a Chapter 7 bankruptcy, In re McDonald, USBC (CA ND) #15-51396 ("Third Bankruptcy Case").

On May 13, 2015 CGS timely filed a Proof of Claim (Claim#1) $47,326.53 (Exhibit J). The $47,326.53 is an updated figure relative to the CGS First Proof of Claim ($30,897.21 principal and $16,429.32 interest ($8.42/day x 1,942 days (January 1, 2010-April 26, 2015))).

On May 5, 2015 Debtors filed a Schedule F (Creditors Holding Unsecured Nonpriority Claims) where they specifically identified CGS as an unsecured creditor for services provided in the amount of $40,753.11 and declared, under penalty of perjury, that the debt was not contingent, unliquidated, or disputed (Doc#9, page 12 of 44)(Exhibit K).

On July 10, 2015 Debtors filed an Amended Schedule F (Creditors Holding Unsecured Nonpriority Claims) wherein they specifically identified CGS as an unsecured creditor for services provided in the amount of $40,753.11 and declared, under penalty of perjury, that the debt was not contingent, unliquidated, or disputed (Doc#32, page 1 of 5)(Exhibit L).

The only difference between the CGS First Proof of Claim, Claim#1, and Debtors' various Amended Schedules is statutory and contractual interest. The only difference between Claim#1 and Debtors' Amended Schedules in this Third Bankruptcy Case is statutory and contractual interest after commencement of the Second Bankruptcy Case through the commencement of the Third Bankruptcy Case (777 days x $8.46/day–$6,573.42).

**III. The Objection to the Proof of Claim Must Be Overruled.**

    **A. Claim#1 Was Timely Filed, Is Presumptively Valid, and Debtors' Schedules Are Prima Facie Evidence of Its Validity and Amount.**

Claim#1 was timely filed as the Proof of Claim deadline was set by the court as September 1, 2015 (See Docket#25)) and Claim#1 was filed on May 13, 2015 (See Claim#1). Pursuant to Bankruptcy Rule 3001 (f) Claim#1 is presumptively valid as a properly filed and executed proof of claim "constitutes prima facie evidence of the validity and amount of the claim.

In addition, Bankruptcy Rule 3003(b)(1) provides, in pertinent part, that:

> "The schedule of liabilities filed pursuant to §521(l) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated . . ."

Debtors, on at least four separate occasions scheduled, under penalty of perjury, their debt to CGS and that the debt was not contingent, not unliquidated, and not disputed.

        **1) The Objection Lacks Legal Authority and Competent Evidence.**

The Objection must be overruled because it is not based on any legal authority, is not based on any competent evidence and is based, at best, on inadmissible hearsay, a lack of personal knowledge, and is not under penalty of perjury.

    **B. The Order Employing CGS as Debtors' Counsel Nunc Pro Tunc In The First Bankruptcy Case Is Res Judicata That CGS's Services Significantly Benefitted the Debtors' Estate.**

The September 16, 2008 order employing CGS as Debtors' counsel nunc pro tunc in

the First Bankruptcy Case is res judicata that CGS's services significantly benefitted the estate. CGS's motion to be employed nunc pro tunc relied on the authority set forth in In Atkins v. Wain, Samuels & Co. (In re Atkins), 69 F.3d 970, 973-974 (9th Cir. 1995) in which the Ninth Circuit stated that retroactive ("nunc pro tunc") employment of a professional: requires a showing that the professional satisfies the criteria for employment pursuant to Section 327 (a) and that exceptional circumstances exists (which requires satisfactory explanation for the failure to receive prior judicial approval). The "exceptional circumstances criteria requires (1) a satisfactory explanation for the failure to receive prior judicial approval and (2) that the professional benefitted the bankruptcy estate in some significant manner.

As the Bankruptcy Court granted CGS's motion to be employed nunc pro tunc, over the objection of the US Trustee, the issue is res judicata, the Objection is precluded, and the Objection must be overruled.

### C. The Prior Allowance of the CGS First Proof of Claim in the Second Bankruptcy Case Is Res Judicata to its Validity in this Third Bankruptcy Case.

The prior allowance of the CGS First Proof of Claim in the Second Bankruptcy Case is res judicata as to its validity in this Third Bankruptcy Case. (Siegel v. Federal Home Loan Mortgage Corporation, 143 F.3d 525 (1998)), precludes the Objection, and requires it be overruled.

### D. The Doctrines of Statutory Estoppel and Judicial Estoppel Preclude the Objection.

Judicial estoppel, both by state law and federal case law, precludes the objection because the Debtors have consistently and repeatedly taken the position that Claim#1 is valid in all respects. Judicial estoppel is a matter of state law found in California Code of Civil Procedure ("CCP) Sections 620 and 623 and applicable case law, i.e. Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir.2008).

#### 1) Statutory Estoppel.

CCP 620 provides "The presumptions established by this article, and all other

**TRIAL BRIEF RE CLAIM OF CAMPEAU GOODSELL SMITH, L.C. (CLAIM#1)**
7
Case: 15-51396    Doc# 83    Filed: 06/21/16    Entered: 06/21/16 11:00:03    Page 7 of 11

presumptions declared by law to be conclusive, are conclusive." CCP 623 provides "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

### 2) Judicial Estoppel.

Similarly, "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir.2008) (quoting Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir.1996)).

Debtors have never objected to CGS's claim in any of their three bankruptcies, consistently and repeatedly (on at least four occasions) declared, under penalty of perjury, that CGS's had a valid and undisputed claim of a specific amount, never objected to CGS's invoices, and never objected or responded to the Notice of Client's Right To Arbitration.

Accordingly, the statutory and case law doctrine of judicial estoppel precludes the Objection and the Objection must be overruled.

### E. The Objection That the Claim Does Not Include a Copy of the Writing Upon Which It Is Based Is Not a Statutory Ground for Disallowance of a Claim.

Pursuant to Bankruptcy Rule 3001(c) and In re Heath, 331 B.R. 424, 435 (BAP 9th Cir. 2005), the objection that the claim does not include a copy of the writing upon which it is based is not a statutory ground for disallowance of a claim. Therefore, the Objection must be overruled.

### F. The Objection That a Fee Application Was Never Filed in a Prior Bankruptcy Is Not a Statutory Ground for Disallowance of a Claim.

Pursuant to Bankruptcy Rule 3001 (c) the objection that a fee application was never filed in a prior bankruptcy case is not a statutory ground for disallowance of a claim. Therefore, the Objection must be overruled.

The basic purpose of 11 U.S.C. 349 (b) is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. (H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6294; S.Rep. No. 989, 95th Cong., 2d Sess. 48-49 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5835). After an order of dismissal, the debtor's debts and property are subject to the general laws. (In re Income Property Builders, Inc, 699 F.2d 963, 965 (9th Cir. 1982)).

The issue presented by the Objection and Reply was addressed and rejected by the 9th Circuit years ago in In re Elias, 215 B.R. 600 (1997). In the matter of In re Elias, after the debtor's chapter 11 case was dismissed, debtor's bankruptcy attorney filed a state-court lawsuit against the former debtor for unpaid chapter 11 attorneys' fees, the debtor filed a motion for summary judgment in the state-court action, arguing, among other things, that her former attorney was not entitled to any fees because he had secured his employment in the bankruptcy case fraudulently by failing to disclose his prior connection with the debtor, the fee he received for the bankruptcy retainer, or his receipt of a potential $3,000.00 preference from the debtor on the eve of filing. Prior to ruling on the motion, the state court requested that the bankruptcy court rule upon the viability of the attorney's lien, the status of the attorney's employment in the bankruptcy case, and whether a preference claim against the attorney could affect his ability to collect a fee. Pursuant to the state court's request, the debtor filed a motion in the bankruptcy court seeking to vacate the order authorizing counsel's employment, cancel the attorney's lien, and determine that counsel was not entitled to any fees. The bankruptcy court denied the debtor's motion. The bankruptcy court found that it did not have jurisdiction to enter further orders concerning the disputed fees. The debtor appealed and the 9th Circuit affirmed, thereby leaving the litigated issues up to the state court.

**G. Claim#1 Is Entitled To Pre-Petition Contractual and Statutory Interest.**

Claim#1 is entitled to pre-petition contractual and statutory interest.

In Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 549 U.S. 443,

127 S. Ct. 1199, 1206 (2007) the court, although dealing with contractual attorney's fees claimed by an unsecured creditor, noted, inter alia, that when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law, property in interests are created and defined by state law, and unless some federal interest requires a different result there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. In simple terms, Travelers confirmed that whether the claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.

The Fee Agreement executed by the Debtors specifically provides for contractual interest at 10% and California law, specifically Cal.Civil.Code 3287, 3288, and 3289, provide for statutory interest at 10%.

The First Bankruptcy Case and Second Bankruptcy Case do not impact Claim#1's entitlement to contractual and statutory interest. As the basic purpose of 11 U.S.C. 349 (b) is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case and after an order of dismissal, the debtor's debts and property are subject to the general laws. (In re Income Property Builders, Inc., 699 F.2d 963, 965 (9th Cir. 1982)).

Accordingly, Claim#1 is entitled to contractual and statutory interest at 10% prior to commencement of the Third Bankruptcy Case.

**IV. Statement of Material Facts-Undisputed.**

CGS submits that there are not any material facts is dispute.

**V. Conclusion.**

The Objection must be overruled on the grounds that the proof of claim filed by Campeau Goodsell Smith, L.C. ("Claim#1) was timely filed and is presumptively valid, Debtors' various schedules are prima facie evidence of Claim#1's validity and amount, the Objection lacks any legal authority or admissible and competent evidence, the order

employing CGS as Debtors' counsel nunc pro tunc is res judicata that CGS's services significantly benefitted the Debtors' estate, the prior allowance of the proof of claim in a prior bankruptcy is res judicata, the doctrine of judicial estoppel precludes the objection, the objection that the claim does not include a copy of the writing upon which it is based is not a statutory ground for disallowance of a claim (Bankruptcy Rule 3001(c); In re Heath, 331 B.R. 424, 435 (BAP 9th Cir. 2005), and the objection that a fee application was never filed in a prior bankruptcy is not a statutory ground for disallowance of a claim (Bankruptcy Rule 3001 (c)).

Dated: June 21, 2016

        CAMPEAU GOODSELL SMITH
        /s/ William J. Healy
        William J. Healy