The following constitutes
the order of the court. Signed June 29, 2016

_____
**M. Elaine Hammond
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Blake Hurley McDonald,<br><br>          Debtor. | Case No. 15-51396 MEH<br><br>Chapter 7<br><br>Date:  June 28, 2016<br>Time:  10:00 a.m.<br>Ctrm:  3020 (San Jose) |

## ORDER OVERRULING CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM

Creditor Campeau Goodsell Smith ("CGS") filed a proof of claim for attorneys' fees incurred and accrued interest arising from its representation of the Debtors in their Chapter 11 case filed in 2007 (POC # 1-1). The Chapter 7 Trustee, Marc Del Piero, objected to the CGS claim because a request for fees was never submitted or approved in the original Chapter 11 case (Dkt # 55). The matter was set for evidentiary hearing and heard on June 28, 2016. The court, having reviewed the legal arguments and evidence presented overrules the Trustee's objection and allows CGS's claim in the amount of $47,326.53.

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This order constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

Background

On October 25, 2007, Debtors retained CGS as counsel to represent them in a Chapter 11 reorganization case. That same day, CGS filed a bankruptcy petition commencing Debtors' first bankruptcy case. A motion to employ CGS was not filed for approximately five months, however on May 19, 2008, the Bankruptcy Court entered an order authorizing employment of CGS as Debtors' counsel nunc pro tunc to the petition date. Following this, the attorney-client relationship deteriorated and CGS sought court approval to be relieved as counsel for Debtors. By order entered October 27, 2008, CGS was relieved as counsel for Debtors in their first bankruptcy case. At no time during this case did CGS seek court approval for fees incurred in the case. Scott Goodsell, a partner at CGS, testified that this was because they determined it would be a futile exercise as there was no money in the case and dismissal was expected at any time.

Following dismissal of their first case, Debtors filed a second bankruptcy case, this time a Chapter 13, with new counsel in March 2013. This case was not successful and was dismissed in December 2014 based on Debtors' failure to confirm a plan.

Debtors filed this Chapter 7 case on April 27, 2015. CGS timely filed its proof of claim.

Analysis

CGS incurred a claim against the Debtors based on its representation of them in their first bankruptcy case. The terms of the parties' agreement are set forth in the Attorney-Client Fee Contract dated October 25, 2007 ("Fee Agreement"). The Fee Agreement provides for "a late charge of 10% per year, . . . of the outstanding total amount owed under this Contract which is not paid when due." (¶8) It further provides that all unpaid charges become immediately due and payable when CGS's services conclude. (¶ 11)

During the first bankruptcy case, CGS's right to compensation was limited by 11 U.S.C. § 330 which provides for reasonable compensation to Debtors' counsel for actual, necessary services rendered during the bankruptcy case. Debtors failed to propose a plan capable of confirmation in their first bankruptcy case and lacked funds to pay administrative claims. On

Case: 15-51396    Doc# 87    Filed: 06/29/16    Entered: 06/29/16 16:15:26    Page 2 of 5

that basis, CGS did not file a motion for approval of their fees following their withdrawal. Once the first case was dismissed, CGS sent a demand letter to Debtors seeking an informal resolution of fees owed prior to filing a lawsuit. No recovery was made. In each of Debtors' subsequent bankruptcy cases, CGS filed a proof of claim asserting a principal claim in the amount of $30,897.21, plus accrued interest at the contractual rate.

Following the Trustee's objection, this matter was set for an evidentiary hearing. In this ruling the court is mindful of the fact that the matter before the court is not a request for allowance of fees, but instead an objection to claim. *See In re Elias*, 188 F.3d 1160, 1162 (9th Cir. 1999) (finding court reviewing bankruptcy fees subsequent to dismissal capable of resolving the disputed issues without reopening the underlying case). This means that any claim allowed will be a general unsecured claim, not a claim entitled to administrative status pursuant to §§ 330(a) and 503.

Looking first at the principal amount of the claim, CGS filed the declaration of Mr. Goodsell in support of its claim providing information similar to that reviewed in determining whether fees should be allowed pursuant to § 330: namely, that the fees were incurred for actual, necessary services rendered and reasonable compensation for the work performed. Because the court finds that the Goodsell declaration and supporting testimony meet this standard, the court need not address whether a lesser standard should apply in the context of an objection to claim. Thus, the principal amount of CGS's claim is allowed in the amount of $30,897.21.

Turning then to the issue of accrued prepetition interest, the question is whether accrued interest should be allowed from January 1, 2010 through the petition date. Section 349(b) provides that unless the court others otherwise, dismissal of a case reinstates a receivership proceeding or custodianship superseded by the Bankruptcy Code and transfers voided under the Bankruptcy Code. It further vacates an order, judgment, or transfer ordered under certain Code sections and revests property of the estate in the entity in which such property was vested immediately before commencement of the case. As pointed out by the Ninth Circuit Court of Appeals in *In re Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985), "[t]he legislative history of § 349(b)

states that '[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" (citing S.Rep. No. 989, 95 Cong., 2d Sess.49, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5835).

Returning CGS to its pre-bankruptcy position restores the debt to the terms of CGS's Fee Agreement as interpreted by California law. As requested by CGS, the Fee Agreement provides for interest at 10% per year. The initial date for interest to accrue, January 1, 2010, is consistent with the Fee Agreement because it is after CGS concluded its services. This is also the beginning interest date requested by CGS in its 2012 payment demand to Debtors. Interest continued to accrue through April 26, 2015, the day before this case's petition date. See § 502(b). As Debtors' intervening second bankruptcy was dismissed, CGS is entitled to calculate interest as if no bankruptcy filing occurred. *See In re Whitmore*, 154 B.R. 314 (Bankr. D. Nev. 1993).

Accordingly, the Trustee's objection to claim is overruled and CGS is entitled to an allowed general unsecured claim in the amount of $47,326.53, consisting of $30,897.21 plus interest of $16,429.32 from January 10, 2010 through April 26, 2015 ($8.46/ day x 1,942 days).

IT IS SO ORDERED.

***END OF ORDER***

**COURT SERVICE LIST**

<u>Via ECF:</u>

All ECF Recipients